IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PREFERRED PRODUCT PLACEMENT CORPORATION,<br><br>          Third-Party Plaintiff,<br>v.<br><br>RIGHT WAY NUTRITION, LLC; KEVIN WRIGHT; TY MATTINGLY; ANNETTE WRIGHT; PRIMARY COLORS, LLC; WEEKES HOLDINGS, LLC; and JULIE C. MATTINGLY;<br><br>          Third-Party Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:11-cv-00496<br><br>Judge Robert J. Shelby |

This motion is part of a broader lawsuit involving Preferred Product Placement Corporation (PPPC) and HCG Platinum, LLC.  Relevant to this Order are PPPC's claims against a group of Third-Party Defendants associated with HCG Platinum.  This group consists of individuals (Julie Mattingly, Ty Mattingly, Annette Wright, and Kevin Wright) and three limited liability companies (Right Way Nutrition, LLC; Primary Colors, LLC; and Weekes Holdings, LLC).  PPPC argues that Third-Party Defendants are alter egos of HCG Platinum and seeks to pierce the corporate veil.  Third-Party Defendants move for summary judgment on PPPC's claims.[1]  For the reasons stated below, the court denies Third-Party Defendants' motion.

---

[1] Dkt. 38.

## BACKGROUND

PPPC and HCG Platinum's dispute is over an alleged breach of contract. HCG Platinum sued PPPC in 2011.[2] PPPC counterclaimed, alleging breach of two contracts: the Manufacturing Agreement and the Noncircumvent Agreement. In an amended complaint, PPPC brought the same claims against Third-Party Defendants under an alter ego theory.[3]

PPPC alleges that HCG Platinum and Right Way (a Third-Party Defendant) commingled business operations and funds, failed to observe corporate formalities, represented to the public that they were one business, and formed shell entities to avoid creditors.[4] The ownership and management structure of the Third-Party Defendant entities is as follows:

- Mr. Wright and Mr. Mattingly manage HCG Platinum;
- Right Way regularly distributed goods for HCG Platinum;
- Primary Colors and Weekes Holdings own Right Way;
- Ms. Mattingly owns 99% of Primary Colors, and Mr. Mattingly owns 1%;
- Ms. Wright owns 99% of Weekes Holdings, and Mr. Wright owns 1%; and
- Primary Colors has an ownership interest in HCG Platinum.

PPPC makes the following allegations related to its alter ego theory:

- there is a unity of interest and ownership with respect to Right Way, HCG Platinum, Weekes Holdings, and Primary Colors;
- the owners of Right Way, Weekes Holdings, and Primary Colors use those organizations as one business without a formal structure;
- Right Way and HCG Platinum have held themselves out as one entity;

---

[2] Dkt. 1, at 3.
[3] Dkt. 2, at 8.
[4] Dkt. 43, at 3-6.

2

- Right Way pays HCG Platinum's employees despite the lack of an operating agreement;

- HCG Platinum and Right Way operated without a distribution agreement until after this litigation began;

- Primary Colors and Weekes Holdings are simply liability shields for a scheme to defraud HCG Platinum's creditors;

- Mr. Mattingly and Mr. Wright have improperly withdrawn money from HCG Platinum for personal use; and

- HCG Platinum is an undercapitalized shell entity.

In response, Third-Party Defendants contend that Right Way is the distribution arm of HCG Platinum and that the two companies are distinct. Third-Party Defendants also state that Ms. Wright, Ms. Mattingly, Mr. Mattingly, Weekes Holdings, Primary Colors, and Right Way have no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum. They also point to HCG Platinum's distribution agreement with Right Way, which took effect in November 2011.

## ANALYSIS

### I. Legal Standard

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[6] A material fact is one that "might affect the outcome of the dispute under the applicable law,"[7] and

---

[5] FED. R. CIV. P. 56(a).
[6] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).
[7] *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995).

a party must show more than "some metaphysical doubt as to the material facts" to establish a genuine dispute.[8]

## II. Alter Ego

A limited liability company is a legal entity whose owners are shielded from liability.[9] Generally, the LLC is solely liable for its debts and obligations. The alter ego doctrine is an exception to the general rule.[10] If a party successfully proves its alter ego theory, it can pierce the corporate veil and obtain a judgment against an LLC's alter egos.[11] Parties often seek to pierce the corporate veil to pursue liability against an individual, but they can also seek to hold one corporation liable for the debts of another.[12] Piercing the corporate veil (often referred to as disregarding the corporate structure or form) is an equitable remedy that courts rarely apply.[13]

PPPC's Third-Party Complaint includes two causes of actions for breach of two separate contracts. Utah law applies to the first contract, the Marketing Agreement. California law applies to the second, the Noncircumvent Agreement. Neither party disputes the choice of law. The court discusses the contracts and the applicable alter ego standards below.

   *A. Marketing Agreement*

Under Utah law, "[f]or one corporate entity to be the alter ego of another, two requirements must be met. First, 'there must be such unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist.' Second, 'the observance of the corporate form [must] sanction a fraud, promote injustice, or [cause] an inequitable result [to]

---

[8] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[9] UTAH CODE § 48-2c-601.
[10] *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012).
[11] *Id.*
[12] *See Mun. Bldg. Auth. of Iron Cnty. v. Lowder*, 711 P.2d 273, 278 (Utah 1985).
[13] *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993).

4

follow.'"[14] The first prong, known as the formalities requirement, refers to the corporate formalities required by statute.[15] The second prong, known as the fairness requirement, "is addressed to the conscience of the court."[16] Under this prong, "[i]t is not necessary that the plaintiff prove actual fraud, but must only show that failure to pierce the corporate veil would result in an injustice."[17] The Utah Supreme Court has adopted eight factors as guidance to determine whether a court should pierce the corporate veil.[18] The first seven go to the formalities prong; the eighth goes to the fairness requirement:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.[19]

These factors are not exhaustive. Utah courts may consider a wide variety of factors when engaging in an alter ego analysis.[20]

At the summary judgment stage, the court considers whether there is a genuine dispute over any material fact, and "evidence of even one of the *Colman* factors may be sufficient to suggest both elements of a party's alter ego theory and therefore preclude summary judgment."[21]

---

[14] *Lowder*, 711 P.2d at 278 (citing *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)); *Dockstader v. Walker*, 510 P.2d 526, 528 (Utah 1973); *Gude v. City of Lakewood, Colo.*, 636 P.2d 691, 697-98 (Colo. 1981)).
[15] See *Jones & Trevor Mktg.*, 284 P.3d at 635.
[16] *Id.* (quoting *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 (Utah Ct. App. 1988)).
[17] *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App, 1987).
[18] *Jones & Trevor Mktg.*, 284 P.3d at 636-37.
[19] *Id.* at 636; *Colman*, 743 P.2d at 786.
[20] See *Jones & Trevor Mktg.*, 284 P.3d at 636 (citing 114 Am. Jur. Proof of Facts 3d 403, § 10 for a list of twenty factors).
[21] *Id.* at 638.

Here, there is evidence that creates a genuine issue of material facts concerning multiple factors.  For example, Third-Party Defendants put forth testimony that Right Way was merely the distribution arm of HCG Platinum and that the two companies did not merge.  Mr. Wright stated in an October 2012 declaration that HCG Platinum had a distribution agreement with Right Way and that Mr. Mattingly had no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum.  Mr. Wright also stated in his deposition that the two companies are "not the same."

Conversely, PPPC submitted evidence that could lead a jury to conclude that HCG Platinum and Right Way had merged without observing corporate formalities.  Mr. Wright stated in a deposition that Right Way was paying the salaries of HCG Platinum's employees because "the company [was] converting to Right Way Nutrition."  Also, Mr. Wright stated in an email that "Right Way Nutrition is the brand going forward.  HCG Platinum is a sub brand and product line."  In another email, Mr. Wright referred to Right Way and HCG Platinum as one company.  Additionally, Mr. Wright stated in August 2011 that he was not aware of any operating agreement between HCG Platinum and Right Way.  In sum, the dispute about whether HCG Platinum and Right Way merged without following corporate formalities rises above "some metaphysical doubt" and creates a genuine factual dispute that is material to the outcome of the case.

In addition, there is a genuine issue of material fact concerning the siphoning of corporate funds by the dominant stockholder.  At the outset, there is a dispute over whether Mr. Wright or Mr. Mattingly have an ownership interest in HCG Platinum.  Third-Party Defendants contend that Mr. Wright manages HCG Platinum, Mr. Mattingly has no ownership in or managerial position at the company, and the company's sole member is NutraSport Holdings, LLC.  Conversely, PPPC submitted deposition testimony and an operating agreement that show Mr.

6

Wright and Mr. Mattingly own and operate the company.  Next, Third-Party Defendants submitted evidence that Mr. Wright has not taken HCG Platinum funds for his personal use.  PPPC, on the other hand, provides records that Mr. Wright and Mr. Mattingly withdrew large sums of money from HCG Platinum's coffers.  PPPC also submits evidence that Mr. Wright purchased three luxury cars and reported them as business assets to the IRS.  In sum, PPPC has presented sufficient evidence of siphoning of corporate funds to create a genuine issue of material fact.

As stated, a genuine dispute over facts pertaining to just one *Colman* factor can be sufficient to preclude summary judgment.[22]  The court declines to undertake an exhaustive analysis of each factor because it is apparent that there are sufficient factual disputes to render summary judgment inappropriate concerning the Marketing Agreement.

B.  *Noncircumvent Agreement*

Under California law, "[a] court may . . . disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation.'"[23]  Although "there are two or more personalities, there is but one enterprise; and . . . this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it."[24]  Similar to Utah, California courts use a nonexhaustive list of factors, including commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, use of the same offices and employees, identical equitable ownership in the two entities, use of one entity as a mere shell or conduit for the affairs of the other, inadequate capitalization,

---

[22] *Id.*
[23] *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 159 Cal. Rptr. 3d 469, 479 (Cal. Ct. App. 2013).
[24] *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 1 Cal. Rptr. 2d 301, 318 (Cal. Ct. App. 1991).

disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.[25]

Like the analysis under Utah law, PPPC has brought sufficient evidence to create a genuine dispute of material facts. PPPC has submitted evidence that all HCG Platinum employees were on Right Way's payroll, that HCG Platinum and Right Way merged without a formal agreement, and that HCG Platinum and Right Way used the same offices and same employees. Again, the court declines to engage in an exhaustive analysis of the alter ego factors. Suffice it to say that PPPC's evidence at this stage creates a genuine dispute of material facts involving more than one factor. In view of this, summary judgment is inappropriate for the Noncircumvent Agreement.

## III. Alter Ego at the Summary Judgment Stage

As a separate basis for denying Third-Party Defendants' motion, the court finds that granting the equitable alter ego remedy at this stage would be premature. The alter ego analysis is fact intensive and factor heavy and is not often amenable to summary judgment. Plus, alter ego relief is necessarily tied to an underlying cause of action, meaning there is no remedy without liability. Thus, the question is ordinarily best addressed after liability is determined at trial. Waiting until after a trial will also allow the court to consider the complete record. The court has broad discretion to fashion equitable remedies[26] and declines to do so in this instance without the benefit of a complete record and a finding of liability.[27]

---

[25] *Toho-Towa Co.*, 159 Cal. Rptr. 3d at 480-81; *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538-39 (Cal. Ct. App. 2000).

[26] *See Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973); *S.E.C. v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006).

[27] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[T]he trial courts should act . . . with caution in granting summary judgment . . . where there is reason to believe that the better course would be to proceed to a full trial."); *In re Agriprocessors, Inc.*, 474 B.R. 896, 904 (Bankr. N.D. Iowa 2012) ("The full record relating to the proper equitable remedy has simply not been made. The Court finds the better course here is to hold a full factual hearing to determine the proper remedy."); *Syncora Guarantee Inc. v. EMC Mortg.Corp.*, 874 F. Supp. 2d 328, 340

## CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Dkt. 38) is DENIED.

**SO ORDERED** this 17th day of February, 2015.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

(S.D.N.Y. 2012) ("At this stage, . . . without a complete factual record, it would be premature to consider what equitable relief, if any, is appropriate.").