# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| HCG PLATINUM, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PREFERRED PRODUCT PLACEMENT<br>CORPORATION,<br><br>　　　　Defendant. | **MEMORANDUM DECISION<br>AND ORDER** |
| PREFERRED PRODUCT PLACEMENT<br>CORPORATION,<br><br>　　　　Counter-claimant,<br><br>v.<br><br>HCG PLATINUM, LLC,<br><br>　　　　Counter-claim Defendant. | Case No. 2:11-cv-00496<br><br>Honorable Clark Waddoups |

Before the court are two motions: Defendant Preferred Product Placement Corporation's ("PPPC") Motion for Clarification or in the Alternative, Motion for Leave to Amend (ECF No. 200), and HCG Platinum, LLC ("HCG Platinum") and the Third-Party Defendants' Motion for Summary Judgment (ECF No. 203). As explained below, the Court GRANTS PPPC's Motion for Clarification and GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment.

## BACKGROUND

HCG Platinum and PPPC's dispute concerns an alleged breach of contract. In 2010, HCG Platinum hired PPPC to market its products. Just over a year into the five-year contract, HCG Platinum filed its lawsuit for breach of contract alleging that PPPC failed to perform under the contract.  It also sought declaratory judgment terminating the contract. (*See* ECF No. 1-1 at 4.) HCG Platinum attached as an exhibit to the Complaint the Manufacturer's Representative Agreement (the "Manufacturer's Agreement") between HCG Platinum and PPPC. *Id*. The Manufacturer's Agreement contains an attorneys' fee provision entitling the prevailing party to attorneys' fees and costs.

On June 1, 2011, PPPC filed its Notice of Removal, Answer, Counterclaim, and Third-Party Complaint. (ECF No. 1 and 2.)

On November 23, 2011, PPPC filed its First Amended Counterclaim and Third-Party Complaint (ECF No. 33), wherein PPPC identified seven third-party defendants: (1) Right Way Nutrition, LLC ("Right Way"); (2) Kevin Wright; (3) Ty Mattingly; (4) Annette Wright; (5) Julie C. Mattingly; (6) Weekes Holdings, LLC; and (7) Primary Colors, LLC (collectively, the "Third-Party Defendants").

The ownership and management structure of the Third-Party Defendants is as follows:

• HCG Platinum was a Utah limited liability company that ceased all operations in 2013;

• Initially, Mr. Wright and Mr. Mattingly managed HCG Platinum. Shortly after its creation, Mr. Mattingly resigned as manager of HCG Platinum and Mr. Wright became the sole manager;

- Although Right Way regularly distributed goods for HCG Platinum, Right Way had no ownership interest in and was not an officer or manager of HCG Platinum;

- Primary Colors and Weekes Holdings own Right Way;

- Ms. Wright owns 99% of Weekes Holdings, and Mr. Wright owns 1%;

- Ms. Mattingly owns 99% of Primary Colors and Mr. Mattingly owns 1%;

- Primary Colors has an ownership interest in HCG Platinum;

- Weekes Holdings has no ownership interest in HCG Platinum;

- NutriSport Holdings, LLC is a member of HCG Platinum; and

- KMATT Holdings, LLC is the managing member of Nutrisport Holdings, LLC.

In its First Amended Counterclaim and Third-Party Complaint, PPPC alleged that the Third-Party Defendants were alter egos of HCG Platinum and sought to pierce the corporate veil. PPPC included the Manufacturer's Agreement as an exhibit to its filing, and also included a Confidentiality Non-Circumvent Agreement (the "Non-Circumvent Agreement") between HCG Platinum and PPPC. *Id*. Like the Manufacturer's Agreement, the Non-Circumvent Agreement contains an attorneys' fees provision entitling the prevailing party to attorneys' fees.

On September 17, 2015, the court entered an order and judgment dismissing PPPC's counterclaims. (*See* ECF No. 104 at 2.) On September 18, 2015, the parties filed a "Notice of Stipulated Voluntary Dismissal of Plaintiff's Claims Without Prejudice." (ECF No. 106.) PPPC timely appealed the court's order challenging the dismissal of its counterclaims. (*See* ECF No. 126).

On October 17, 2017, the Tenth Circuit entered its opinion reversing "the district court's judgment in favor of HCG on PPPC's counterclaims" and remanded the case back to the district

court. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1206 (10th Cir. 2017). At this point, PPPC's counterclaims were revived and reinstated.

After the case was remanded, Judge Shelby recused, and the case was reassigned to the undersigned. (ECF No. 147.)

On September 24, 2019, the Court entered an order allowing the HCG Parties to refile their affirmative claims against PPPC, in light of the Tenth Circuit reinstating PPPC's counterclaims and third-party claims. *(See* ECF No. 169). The court allowed "refiling the claims in the form they were in prior to the September 2015 trial solely for the purpose of allowing the HCG Platinum parties to pursue those claims as if they had not been dismissed." (ECF No. 169 at 14).

HCG Platinum filed its Amended Complaint on November 4, 2019. On September 23, 2020, PPPC filed its Answer to HCG Platinum's Amended Complaint. Importantly, PPPC's Answer did not include, and PPPC did not refile or reallege, its previously asserted Counterclaim and Third-Party Complaint which the Tenth Circuit had reinstated in its order reversing the district court's decision dismissing PPPC's counterclaims.

## ANALYSIS

### I.      Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986) (citation omitted). When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## II.    Motion for Clarification or in the Alternative, Motion for Leave to Amend

PPPC moves this court to clarify that its counterclaims are still viable, despite failing to replead them in its Answer to HCG Platinum's Amended Complaint. By contrast, HCG Platinum and the Third-Party Defendants contend that "PPPC abandoned all affirmative claims (both counterclaims and third-party claims) it had in this case when it voluntarily chose not to refile those claims." (ECF No. 203 at 1.)

District courts across the country vary regarding whether a party abandons or waives a counterclaim by failing to re-plead it in its answer to an amended complaint. *Compare, e.g., Hitachi Med. Sys. Am., Inc. v. Horizon Med. Group*, No. 5:07CV02035, 2008 WL 5723531 (N.D. Ohio Aug. 29, 2008); *Dunkin' Donuts, Inc. v. Romanias*, No. Civ.A.00-1886, 2002 WL 32944392 (W.D. Pa. May 29, 2002) *with Settlement Capital Corp., Inc. v. Pagan*, 649 F.Supp.2d 545 (N.D. Tex. 2009); *Johnson v. Berry*, 228 F.Supp.2d 1071 (E.D. Mo. 2002); *Bremer Bank, Nat. Ass'n v. John Hancock Life Ins. Co.*, Civil No. 06-1534 ADM/JSM, 2009 WL 702009 (D. Minn. Mar. 13, 2009). PPPC relies primarily on the reasoning found in *Dunkin' Donuts v. Romanias*, 2002 WL 32955492 at *2, *Davis v. Beaird*, No. 4:10-CV-1429 NAB, 2014 WL 916947 (E.D. Mo. Mar. 10, 2014), and *Hampton v. Barclays Bank Delaware*, 478 F.Supp.3d 1113 (D. Kan Aug. 13, 2020), to support its position that a counterclaim stands independent of a party's answer.  By contrast, HCG Platinum and the Third-Party Defendants rely primarily on *Johnson v. Berry*, 228 F. Supp. 2d 1071 (E.D. Mo. 2002) for the proposition that a defendant abandons his counterclaim if he fails to replead it in response to an amended complaint.

In this case, the court finds the reasoning of the line of cases cited by PPPC to be more persuasive for three reasons. First, Rule 13 of the Federal Rules of Civil Procedure, which governs counterclaims, only requires that a counterclaim be set forth in a pleading; it does not mandate that it be contained in an answer. *See* FED.R.CIV.P. 13(a)-(f). While "an answer responds to the allegations in a complaint, a counterclaim is something independent." *Dunkin Donuts*, 2002 WL 32955492 at *2. In other words, the counterclaim stands on its own. Revisions to a complaint do not require the perfunctory repleading of a counterclaim.

Second, the procedural posture of this case is unique: PPPC's counterclaims were originally dismissed by the district court. However, on appeal, the Tenth Circuit reversed the district court's determination, essentially reinstating the counterclaims. These counterclaims were revived regardless of HCG Platinum's underlying Complaint. The claims stand independent of HCG Platinum's Amended Complaint and PPPC's Answer. By overturning the district court's dismissal of PPPC's counterclaims, the counterclaims were essentially never dismissed. *See Barnes v. Akal Sec., Inc.*, No. 04-1340-WEB, 2005 WL 3359717, at *1 n.2 (D. Kan. Dec. 9, 2005) (concluding that although amended answer did not restate counterclaim, the claim remained valid because it was never dismissed).

Finally, the court notes that since this case was reinstated by the Tenth Circuit's reversal of the underlying dismissal, both sides have directed their discovery almost exclusively to the Counterclaim and the Third-Party Complaint. Among other things, HCG sought discovery on the alter ego and damages issues and PPPC concentrated its efforts on damages. Both parties designated experts on damages relating exclusively to PPPC's Counterclaim and Third-Party Complaint. Discovery and expert testimony have gone almost exclusively to the counterclaims. HCG Platinum and the Third-Party Defendants have therefore been on notice of the

Counterclaim and Third-Party Complaint and dismissing them now would be unjust. In short, HCG Platinum will suffer no undue prejudice or hardship by maintaining the Counterclaim and Third-Party Complaint. Plaintiff's Motion for Clarification is GRANTED: PPPC's Counterclaim and Third-Party Complaint were not abandoned when the Tenth Circuit reinstated the claims by its reversal of the district court's underlying decision. PPPC's counterclaims and Third-Party Complaint are still pending.

### III.    Motion for Summary Judgment

Next, HCG Platinum and the Third-Party Defendants move for summary judgment arguing that PPPC has failed to present any admissible evidence that shows that any of the Third-Party Defendants were the alter egos of HCG Platinum. By contrast, PPPC argues that under both Utah and California law, all seven Third-Party Defendants were indeed alter egos of HCG Platinum and therefore its claims should be allowed to proceed to trial.

#### A.    Choice of Law

HCG Platinum and PPPC's dispute concerns alleged breaches of two contracts: the Manufacturing Agreement and the Non-Circumvent Agreement. Utah law applies to the Manufacturing Agreement; California law applies to the Non-Circumvent Agreement. Neither party disputes the choice of law. The court addresses the contracts and the applicable alter ego standards below.

#### 1.    Utah Law and the Manufacturing Agreement

Under Utah law, "a corporation is [generally] regarded as a legal entity, separate and apart from its stockholders." *The Lodges at Bear Hollow Condominium Homeowners Ass'n, Inc.*

*v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 150 (citation omitted).[1] "The purpose of such separation is to insulate the stockholders from the liability of the corporation, thus limiting their liability only to the amount that the stockholders voluntarily put at risk." *Id*. (citation omitted). Alter-ego liability is an exception to this general rule. Piercing the corporate veil to hold shareholders or members liable for company debts is an extraordinary request that will only be granted "reluctantly and cautiously" by courts, and only under limited appropriate circumstances. *See Salt Lake City Corp. v. James Constructors*, 761 P.2d 42, 46 (Utah Ct. App. 1988).

Utah courts apply a two-part test to determine whether a party may pierce the corporate veil. "The first part of the test, often called the 'formalities requirement,' requires the movant to show 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.'" *Id.* (citing *Norman v. Murray First Thrifts & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)). "[T]he formalities requirement is determined by examining seven factors," including:

> (1) undercapitalization of a one-person corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; and (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders . . . .[2]

*Id*. (quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). These factors are not exhaustive and "evidence of even one of the *Colman* factors may be sufficient to . . . preclude summary judgment." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012).

---

[1] This general rule also applies to limited liability companies. *See d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 521 (Utah Ct. App. 2006).

[2] *Colman* set forth eight factors to examine under the formalities requirement. However, the Utah Supreme Court clarified that "the first seven *Colman* factors relate to the formalities element of the alter ego test, while the eighth *Colman* factor is merely a restatement of the fairness element and is therefore 'superfluous.'" *Jones & Trevor Mktg. v. Lowry*, 284 P.3d 630, 637 (Utah 2012).

"The second part of the test, often called the 'fairness requirement,' requires the movant to show that observance of the corporate form would sanction a fraud, promote injustice, or condone an inequitable result." *Id*. (citing *Norman*, 596 P.2d at 1030). "Both prongs of the . . . test must be met in order to make an alter ego claim." *Eskelsen v. Theta Inv. Co.*, 437 P.3d 1274, 1283 (Utah Ct. App. 2019). The fairness requirement need not be addressed if the formalities requirement has not first been satisfied. *See Simons v. Park City RV Resort, LLC*, 354 P.3d 215, 221 (Utah Ct. App. 2015).

## 2. California Law and the Non-Circumvent Agreement

To prevail on its alter ego theory under California law, PPPC must show for each and every one of the Third-Party Defendants that "(1) there is such a unity of interest that the separate personalities no longer exist; and (2) inequitable results will follow if the corporate separateness is respected." *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811, 110 Cal. Rptr. 3d 597, 606 (2010) (citation and punctuation omitted). California courts "examine all the circumstances to determine whether to apply the [alter ego] doctrine." *Id*. Similar to Utah, California courts have identified numerous factors that may serve as relevant considerations, including, among others:

> [C]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . . ; the treatment by an individual of the assets of the corporation as his own . . . ; the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities . . . ; the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . . ; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . . ; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities . . . ; the disregard of legal formalities . . . ; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liability between entities so as to concentrate the assets in one and the liability in another

> . . . ; and the formation and use of a corporation to transfer to it the exiting
> liability of another person or entity.

*Id*. at 811-12 (citations omitted).

Because there is such significant overlap of the alter ego factors between Utah and California law, the court will assess whether there are any genuine disputes of material fact concerning alter ego liability of each Third-Party Defendant under both contracts together.

### B.  Third-Party Defendants

As previously stated, to survive a summary judgment motion, PPPC must show that there are genuine disputes of material fact with respect to each and every Third-Party Defendant. HCG and the Third-Party Defendants contend that there are no such issues and that the Third-Party Defendants lack sufficient ties and control to HCG Platinum to warrant piercing the corporate veil. Conversely, PPPC contends that whether under Utah law or under California law, a triable issue of fact exists whether HCG and the Third-Party Defendants are the alter egos of each other.

The court must assess each individual Third-Party Defendants' relationship with HCG Platinum separately and does so below.

### 1.  Right Way

Right Way is a limited liability company who manufactures and distributes products for HCG Platinum. HCG Platinum and the Third-Party Defendants contend that the court should not pierce the corporate veil because although HCG Platinum and Right Way had a cooperative business relationship, Right Way is an entirely distinct entity from HCG Platinum. In support, the Third-Party Defendants put forth deposition testimony that HCG Platinum had a distribution agreement with Right Way and that the two companies never merged into a single entity. While HCG Platinum and the Third-Party Defendants admit that many of HCG Platinum's employees eventually became employees of Right Way, and that the two companies occupied the same

office space for a period of time, the companies maintained separate legal identities at all relevant times.

Conversely, PPPC submitted Mr. Wright's deposition testimony wherein he stated that Right Way was paying the salaries of HCG Platinum's employees because "the company [was] converting to Right Way Nutrition." Also, Mr. Wright stated in an email that "Right Way Nutrition is the brand going forward. HCG Platinum is a sub brand and product line." In another email, Mr. Wright referred to Right Way and HCG Platinum as one company. And Mr. Wright's Right Way business card contained an HCG Platinum email address. In essence, PPPC argues that there were no agreements or separation of accounts between Right Way and HCG Platinum and therefore, the corporate form should not be protected.

As previously stated, a genuine dispute regarding a material fact pertaining to just one *Colman* factor can be sufficient to preclude summary judgment. *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012). Here, there are at least several facts in genuine dispute regarding the alter ego factors under both Utah and California law. Specifically, there is a genuine dispute concerning whether HCG Platinum and Right Way merged without following corporate formalities. Accordingly, granting summary judgment at this stage in the proceedings is inappropriate under either Utah or California law. The court therefore DENIES HCG Platinum's and the Third-Party Defendants' Motion for Summary Judgment with respect to Right Way; PPPC's claims against Right Way may proceed to trial.

### 2.    Kevin Wright

Kevin Wright is the President of HCG and Right Way. HCG Platinum and the Third-Party Defendants allege that the court should not find alter ego liability regarding Mr. Wright because he was merely the manager of HCG Platinum and that there are no other *Colman* factors

or factors under California law justifying individual liability. HCG Platinum and the Third-Party Defendants argue that Mr. Wright did not use HCG Platinum for any purpose other than as a company with health and wellness products. To support their position, HCG Platinum and the Third-Party Defendants allege that Mr. Wright was entitled to withdraw funds from the company and that merely withdrawing funds from corporate accounts is an insufficient basis on which to pierce the corporate veil. Accordingly, HCG Platinum and the Third-Party Defendants move this court for summary judgment and request Mr. Wright be dismissed from the lawsuit.

PPPC, by contrast, argues that Mr. Wright has taken large sums of money out of the company coffers for personal use. Specifically, PPPC alleges that Mr. Wright has taken $1,141,368 out of HCG Platinum without any formula governing how such funds are distributed. PPPC further alleges that Mr. Wright has purchased three expensive cars totaling over $200,000 with HCG Platinum funds for "business purposes," but in reality, he gave at least one of these vehicles to his wife, Annette Wright, to drive. PPPC argues that these facts are sufficient evidence of siphoning of corporate funds to create a genuine issue of material fact.

The court agrees with PPPC. There are sufficient factual disputes to render summary judgment inappropriate concerning Mr. Wright and his use of company funds for personal use. There is a genuine dispute over facts pertaining to the siphoning of corporate funds and as previously stated, a genuine dispute over even one *Colman* factor is sufficient to preclude summary judgment. *See id*. Here, PPPC has met its burden and HCG Platinum and the Third-Party Defendants' Motion for Summary Judgment is DENIED with respect to Mr. Wright.

### 3.    Ty Mattingly

Mr. Mattingly was originally a manager of HCG Platinum but ceased serving in that capacity shortly after the company's formation. His only connection to HCG Platinum is due to

his 1% ownership interest in Primary Colors. HCG Platinum and the Third-Party Defendants argue that Mr. Mattingly has no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum. HCG Platinum and the Third-Party Defendants admit that Mr. Mattingly served as a manger of HCG Platinum when it was first formed, but aver that he resigned shortly thereafter. Once Mr. Mattingly ceased serving as a manger of HCG Platinum, HCG Platinum and the Third-Party Defendants argue that he no longer had a direct connection to HCG Platinum; Mr. Mattingly's only connection was an indirect one as a result of his one-percent ownership interest in Primary Colors.

To rebut HCG Platinum and the Third-Party Defendants' allegations, PPPC merely states that "Mattingly testified that HCG became Right Way Nutrition." Id. at 24. PPPC also alleges that Mr. Mattingly withdrew $235,000.00 from HCG Platinum's coffers, but does not offer any evidence to suggest that such withdrawal was improper. Indeed, HCG Platinum and the Third-Party Defendants instead aver that these distributions were identified and properly accounted for in HCG Platinum's financial ledgers. PPPC offers no evidence that Mr. Mattingly blurred the lines between HCG Platinum and himself sufficient to justify piercing the corporate veil. Indeed, none of the *Colman* factors or factors enumerated under California law are proven, if even alleged, by PPPC. There are simply no facts to sufficiently tie Mr. Mattingly to HCG Platinum to warrant piercing the corporate veil. Accordingly, the court GRANTS HCG Platinum and the Third-Party Defendants' Motion for Summary Judgment and dismisses Mr. Mattingly with prejudice from this lawsuit.

### 4.    Annette Wright

HCG Platinum and the Third-Party Defendants argue that Ms. Wright has no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum. HCG

Platinum and the Third-Party Defendants further argue that to the extent Ms. Wright received funds from HCG Platinum, it was as a valid shareholder distribution or for a legitimate business purpose. HCG Platinum and the Third-Party Defendants allege that Ms. Wright is being sued solely because she is married to Mr. Wright, who was the manager of HCG Platinum.

To support its claims, PPPC has alleged that Ms. Wright drives a 2008 Mercedes and Mr. Wright bought his wife a car with HCG Platinum funds in 2008. Therefore, according to PPPC, this is sufficient to justify piercing the corporate veil. PPPC also alleges that Ms. Wright was a "control person" without any further evidence than offering this conclusory statement. *See id*. at 20.

Other than these statements, PPPC has produced no evidence of a relationship – let alone an improper relationship – between HCG Platinum and Annette Wright. Alter ego liability is only proper where there is such a "unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). Individuals with no knowledge of or control over a company's affairs simply cannot be considered alter egos of that company. PPPC has failed to marshal sufficient facts to show that Annette Wright is the alter ego of HCG Platinum. Therefore, the court GRANTS HCG Platinum and the Third-Party Defendant's Motion for Summary Judgment with respect to Annette Wright. Annette Wright is dismissed with prejudice from this lawsuit.

### 5.    Julie C. Mattingly

Ms. Mattingly's connection to HCG Platinum is through her ownership interest in Primary Colors. Primary Colors invested in HCG Platinum. HCG Platinum and the Third-Party Defendants argue that Ms. Mattingly has no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum. To the extent Ms. Mattingly received funds

from HCG Platinum, it was as a valid shareholder distribution or for a legitimate business purpose. HCG Platinum and the Third-Party Defendants allege that there is no evidence of any sort of relationship between HCG Platinum and Julie Mattingly and therefore, imposing individual liability is improper.

Conversely, PPPC argues that because Ms. Mattingly was a manager and 99% owner of Primary Colors, she and HCG Platinum are one and the same, and thus, the court must pierce the corporate veil out of equitable concerns.

The court disagrees with PPPC. Other than Ms. Mattingly's ownership interest in Primary Colors, there is not one piece of evidence indicating that Ms. Mattingly controlled HCG Platinum. She did not commingle funds; there is no evidence that she shared such a unity of interest that the corporate form became a fiction. Simply stated, Ms. Mattingly was a removed owner of Primary Colors. Alter ego liability is only proper where there is such "a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). Here, there simply is no such unity of interest. HCG Platinum and the Third-Party Defendants' Motion for Summary Judgment is GRANTED, and Ms. Mattingly is dismissed with prejudice from the matter.

### 6. Weekes Holdings

Weekes Holdings is owned by Kevin Wright and Annette Wright. Weekes Holdings has no ownership interest in HCG Platinum nor did it have any contracts with or receive payments from HCG Platinum. HCG Platinum and the Third-Party Defendants argue that Weekes Holdings had no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum. HCG Platinum and the Third-Party Defendants also allege that Weekes Holdings never merged with HCG Platinum and that Weekes Holdings had no contracts or associations

with HCG Platinum. HCG Platinum and the Third-Party Defendants contend that Weekes Holdings and HCG Platinum and their respective businesses were not tracked in the same accounting ledgers. To the extent Weekes Holdings received funds from HCG Platinum it was as a valid shareholder distribution or for a legitimate business purpose. In other words, HCG Platinum and the Third-Party Defendants argue that there is not a sufficient intimate connection between Weekes Holdings and HCG Platinum to justify the court piercing the corporate veil.

In response, PPPC repeatedly states that as of December 8, 2011, "through KMATT Holdings LLC and Nutrisport Holdings LLC, Weekes Holdings was an owner and controlled HCG Platinum." ECF NO. 208 at 18. This is the extent of PPPC's allegations of inappropriate behavior justifying piercing Weekes Holdings' corporate veil. This, by itself, is insufficient to create a genuine issue of material fact. The court GRANTS HCG Platinum's and the Third-Party Defendants' Motion for Summary Judgment with respect to Weekes Holdings. Weekes Holdings is dismissed with prejudice from this lawsuit.

### 7.   Primary Colors

Primary Colors is a Utah limited liability company owned by Ty Mattingly and Julie Mattingly. Primary Colors invested in and thereby had a 40% interest in HCG Platinum. However, despite this ownership interest, HCG Platinum and the Third-Party Defendants argue that Primary Colors had no knowledge of or control over the day-to-day operations or financial decisions of HCG Platinum. HCG Platinum and the Third-Party Defendants also allege that Primary Colors never merged with HCG Platinum and that Primary Colors had no contracts or associations with HCG Platinum. The Third-Party Defendants contend that Primary Colors and HCG Platinum and their respective businesses were not tracked in the same accounting ledgers

and to the extent Primary Colors received funds from HCG Platinum, it was as a valid shareholder distribution or for a legitimate business purpose.

To contradict these allegations, PPPC states that "Mattingly had control over HCG Platinum. Later, through KMATT and Nutrisport, Primary Colors controlled HCG." ECF No. 208 at 17. This is the sum total of allegations regarding Primary Colors' control over HCG Platinum. PPPC has produced almost no evidence of a relationship – let alone an improper relationship – between HCG Platinum and Primary Colors. There are simply no disputed issues of material fact allowing the court to pierce the corporate veil. Accordingly, HCG Platinum's and the Third-Party Defendants' Motion for Summary Judgment is GRANTED with respect to Primary Colors. Primary Colors is hereby dismissed with prejudice from this lawsuit.

### C.      Attorneys' Fees and Costs

HCG Platinum and the Third-Party Defendants argue that they should be awarded their attorneys' fees and costs as prevailing parties under the Manufacturing Agreement and the Non-Circumvent Agreement. Both agreements include attorneys' fees provision entitling the prevailing parties to their attorneys' fees and costs. However, because HCG Platinum and the Third-Party Defendants did not uniformly prevail in their Motion for Summary Judgment, the court finds that an award of attorneys' fees and costs is not merited and denies the request.

### CONCLUSION

PPPC's Motion for Clarification is GRANTED: PPPC's counterclaims are still pending before this Court.

HCG Platinum and the Third-Party Defendants' Motion for Summary Judgment is GRANTED with respect to Ty Mattingly, Annette Wright, Julie C. Mattingly, Weekes Holdings

and Primary Colors. HCG Platinum and the Third-Party Defendants' Motion for Summary

Judgment is DENIED with respect to Right Way and Kevin Wright.


DATED this 5th day of June, 2023.


Clark Waddoups
United States District Court Judge